THELEN v. MUTUAL BENEFIT HEALTH & ACCIDENT ASS'N.

1. DEPOSITIONS—DEPONENT AS WITNESS.
Deposition of witness who was sworn and testified on behalf of defendant during the trial was properly excluded as his testimony precludes jury's consideration of deposition (3 Comp. Laws 1929, § 14166).

2. WITNESSES—CROSS-EXAMINATION UNDER STATUTE.
Cross-examination of a witness under the statute is permitted when the witness thus called is the opposite party or his employee or agent (3 Comp. Laws 1929, § 14220).

3. DEPOSITIONS—CROSS-EXAMINATION—OPPOSITE PARTY'S AGENT OR EMPLOYEE.
Deposition of witness called by defendant for cross-examination under the statute was properly suppressed when court ascertained witness was neither an employee nor an agent of plaintiff (3 Comp. Laws 1929, § 14220).

4. WITNESSES—ATTENDANCE—JURISDICTION.

    After a witness has appeared in court during a trial and is within the jurisdiction of the court he can be compelled to give testimony (3 Comp. Laws 1929, § 14166; Court Rule No. 32 [1933]).

5. SAME—IMPEACHMENT OF OWN WITNESS.

    A party may not impeach his own witness by cross-examination and attempting to show prior contradictory statements.

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—GREAT WEIGHT OF EVIDENCE.

    Question as to whether verdict of the jury was against the great weight of the evidence was not before Supreme Court where not claimed as a ground for new trial in motion made therefor, no claim for reversal on such basis is made in the assignments of error or reasons and grounds of appeal, and question is not raised in appellant's statement of questions involved.

7. SAME—JUDGMENT NON OBSTANTE VEREDICTO—EVIDENCE.

    On appeal from denial of a defendant's motion for judgment *non obstante veredicto,* the Supreme Court is required to view the evidence and all reasonable inferences therefrom in the light most favorable to plaintiff.

8. SAME—REVIEW OF CHANCERY CASES—PREPONDERANCE OF THE EVIDENCE.

    Chancery cases are reviewed *de novo* and the Supreme Court then has before it the question of the preponderance of the evidence.

9. INSURANCE—HEALTH AND ACCIDENT INDEMNITY—FRAUD—QUESTION FOR JURY.

    In action to recover money claimed to be due insured under a health and accident policy on which insurer had paid policy indemnities for a year, wherein defendant refused to continue making payments because of alleged misrepresentation in making application for insurance some 19 months before illness occurred, where question of weight of the evidence is not before the court and there was substantial testimony to support verdict, judgment entered thereon will not be reversed.

10. APPEAL AND ERROR—CREDIBILITY OF WITNESSES.

    The matter of credibility of witnesses who give conflicting testimony is for the jury.

11. Same—Argument to Jury—Peremptory Instructions.
    Alleged improper closing argument to jury by counsel for plaintiff insured in action against insurer on a health and accident insurance policy may not be relied on for reversal and new trial where argument of defendant's counsel does not appear in record, plaintiff's counsel did not persist in pursuing objectionable argument after adverse rulings by court, and no request for peremptory instructions was submitted.

Appeal from St. Clair; George (Fred W.), J. Submitted October 13, 1942. (Docket No. 86, Calendar No. 42,167.) Decided December 23, 1942.

Assumpsit by John H. Thelen against Mutual Benefit Health & Accident Association, a Nebraska corporation, on a policy of health and accident insurance. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Eugene F. Black,* for plaintiff.

*Clifford N. Toohy* (*Laurie O. Telfer,* of counsel), for defendant.

Boyles, J.  Plaintiff brought suit for money claimed to be due and owing on a health and accident policy issued by defendant company on April 25, 1939. Tried before a jury, plaintiff had verdict and judgment for two months' payments, $170, and costs. For reversal, defendant claims that plaintiff obtained the policy by misrepresentations in the application, and also relies on certain claimed errors during the trial.

Plaintiff signed a written application for the insurance in April, 1939. The following questions were asked and the following answers given:

"11. Are you sound physically and mentally? Answer as to each *Yes*  *  *  *

"12. Have you ever had any of the following diseases: Rheumatism, neuritis, arthritis, sciatica, epilepsy, appendicitis, *diabetes,* any *kidney trouble,* cystitis, any disease of the brain or nervous system, *heart disease,* tuberculosis, bronchitis, gall bladder trouble, any stomach trouble, any intestinal trouble, cancer, syphilis, *high or low blood pressure,* tonsillitis, rectal trouble, malaria?

"Name diseases, dates and length of disability. *No*
\* \* \*

"13. Have you received medical or surgical treatment or had any local or constitutional disease not mentioned above, within the last five years? Answer as to each *See 10* (Flu — Feb. 1939)  \* \* \*

"17. Do you agree that the insurance hereby applied for shall not be binding upon the association until a policy is issued, and accepted by you while in good health and free from injury? *Yes*"

At the time the policy was issued plaintiff had no apparent reason for believing he was not in good health. He had been steadily employed as a waiter and bartender in various clubs. In November, 1940, 19 months after the policy was issued, he was again taken sick with the flu. On January 12, 1941, he was stricken with a paralytic stroke which left his entire right side paralyzed. Since that time he has been totally incapacitated, getting around only in a wheel chair. The company paid plaintiff the policy indemnities from November, 1940, until October, 1941, then refused to continue payments, claiming misrepresentation in making the application. Suit was brought to recover the monthly indemnities for the ensuing two months and the defendant filed a counterclaim for recoupment of the amounts already paid, less the premiums, stipulated during trial to be $876.

Defendant claims that plaintiff for three or four years prior to the issuance of the policy had been

afflicted with high blood pressure, arteriosclerosis, heart trouble, and kidney disease. No medical examination of plaintiff was required, or had, prior to issuance of the policy. Defendant relies on the testimony of Dr. Gates who had known plaintiff for about 25 years, and Dr. Sites who first saw and examined plaintiff just before the trial.

Several months before trial, defendant, upon notice, took the deposition of Dr. Gates at Ann Arbor. Before trial, on plaintiff's motion, and for reasons appearing sufficient to the court, the deposition was suppressed. Defendant claims this was error. This deposition of Dr. Gates was taken by defendant calling him as a witness for cross-examination under the statute (3 Comp. Laws 1929, § 14220 [Stat. Ann. § 27.915]). In the deposition, the defendant claimed the right to cross-examine the witness. The statute permits such cross-examination when the witness thus called is the opposite party or his employee or agent. When the fact was established beyond question that the witness was neither an employee nor agent of plaintiff, the court suppressed the deposition. The deposition and cross-examination was properly excluded. Dr. Gates was sworn and testified on behalf of the defendant during the trial. He was thoroughly questioned and cross-examined and considerable latitude allowed. His testimony in open court precluded the consideration of his deposition by the jury. *Dunn* v. *Dunn,* 11 Mich. 284; *Emlaw* v. *Emlaw,* 20 Mich. 11; *S. C. Hall Lumber Co.* v. *Gustin,* 54 Mich. 624. After the witness had appeared in court during the trial and was within the jurisdiction of the court, he could have been compelled to give testimony. 3 Comp. Laws 1929, § 14166 (Stat. Ann. § 27.860); Court Rule No. 32 (1933). Defendant complains that counsel should have been allowed to cross-examine Dr. Gates and

show inconsistent statements. The doctor was the defendant's witness. A party may not impeach his own witness by cross-examination and attempting to show prior contradictory statements. *Farthing* v. *Hepinstall*, 243 Mich. 380.

There is no doubt that there was a sharp conflict of testimony. Plaintiff, testifying in his own behalf, said that he worked steadily until taken ill with the flu in November, 1940; that Dr. Gates did not check him over or take his blood pressure with an instrument, that all Dr. Gates did was just to hold his wrist and take his pulse; that he never had any dizzy spells or shortness of breath prior to making the application; that Dr. Gates was never his physician, or treated him, or gave him any medicine; that the only illness he had, outside of an injured knee, was the flu; that his health was good up until he had a stroke. On the other side, Dr. Gates testified that he examined plaintiff prior to 1938, took his blood pressure by using an instrument, found it abnormally high, that he had arteriosclerosis, some kidney trouble. There is much in the lengthy examination of Dr. Gates that indicates this witness was unwilling, or uncertain as to some facts. Much of his testimony was elicited by leading questions. He admitted having signed the following letter of October 24, 1941, addressed to the defendant company, although denying, or being uncertain as to it having been mailed:

"Dear Sirs:

"One week ago your agent came into my office and asked for a statement of treatments rendered Jack Thelan of Port Huron, Mich.

"Without looking at the records I made a statement and signed it. Since then I find that I did not treat Mr. Thelan but that it was Mrs. Jack Thelan I had treated.

"I did not examine or prescribe for Mr. Thelan. It has been three years since I saw him and I do not know anything whatever of his previous or present condition."

Dr. Sites, for the defendant, examined plaintiff in March, 1942, a month before the trial, and about 14 months after plaintiff suffered the paralytic stroke. He found plaintiff had abnormally high blood pressure, indications of a valvular leakage in the heart, urinalysis showed a large amount of sugar and albumen, he found indications of nephritis, and hardening of the arteries. He testified that in his opinion this condition had existed for at least five years, probably longer.

Were we called upon to determine whether the verdict was contrary to the great weight of the evidence, a weighing of the entire testimony for both parties would be necessary for decision. However, defendant in making a motion for new trial made no claim that the verdict was contrary to the great weight of the evidence. In that motion, the asserted grounds were that the court erred in refusing to direct a verdict for defendant, errors in admitting (or declining to admit) certain testimony, and improper argument of counsel. Appellant's statement of questions involved in this appeal does not raise the question of great weight of the evidence. No claim for reversal on that ground is made in the assignments of error or reasons and grounds of appeal. The question of great weight is not before us. The appeal is from the denial of defendant's motion for judgment *non obstante veredicto* on certain questions of law stated therein. As to the facts, we are required to view the evidence and all reasonable inferences therefrom in the light most favorable to plaintiff.

As stated by the trial court in denying the motion for directed verdict, "The important question is: was there a question or questions of fact for the jury to pass upon?" There was submitted to the jury the testimony of the plaintiff, the contradictory testimony of Dr. Gates, and the expert opinion testimony of Dr. Sites. We are not here considering a situation where the insurer filed a bill in chancery to cancel a policy on the ground of misrepresentations in the application. In such a case, this court reviews the matter *de novo*, and has before it the question of the preponderance of the evidence. Such situations were before us, under 3 Comp. Laws 1929, § 12444 (Stat. Ann. § 24.280), in *Prudential Ins. Co. v. Ashe*, 266 Mich. 667, and *North American Life Assurance Co. v. Jones*, 287 Mich. 298. They are not controlling of the case at bar.

In *Ligrow v. Abraham Lincoln Life Ins. Co.*, 260 Mich. 444, the suit was to recover benefits on a sickness and accident indemnity policy. The policy was issued on March 15th, delivered March 16th, and contained the provision it was not to be in force unless the insured was in good health at the time of its delivery. From March 12th to March 31st plaintiff took baths for a temporary illness and consulted a physician. On or about May 2d he suffered a protracted illness for which recovery of the indemnity was sought. Although defendant's evidence that plaintiff was not in good health when the policy was delivered was supported by statements made by the plaintiff, this court said:

"Under this rule, plaintiff's testimony and that of his attending physician, above stated, to the effect that his ailment while at St. Louis was temporary and not serious, gives support to the finding of the jury that plaintiff, despite the ailment, was in good health at the time or times in question.

"The verdict therefore is supported by evidence and must be sustained. That it is against the great weight of the evidence is a question not before us."

*Wohlfeil* v. *Bankers Life Co.*, 296 Mich. 310, also was a suit to recover on an insurance policy. The defense was that the policy was void because of false statements in an application for reinstatement. Defendant moved for a directed verdict, and for judgment *non obstante veredicto,* on the ground that the uncontradicted testimony of a doctor conclusively proved that the statements were false and fraudulent; and also moved for a new trial. On appeal, defendant contended:

"That the verdict was contrary to uncontradicted testimony, or at least was contrary to the great weight of evidence."

This court said:

"While there is testimony in the record which tends strongly to indicate that the insured's answers to questions 5 and 7 above quoted were false, still there is other testimony tending to support a contrary conclusion.   *   *   *

"Without quoting further from the testimony, we are satisfied from our review of the whole record that a question of fact was presented as to whether the insured's answers to questions 5 and 7 hereinbefore quoted were true or false.   *   *   *

"Taken as a whole, the record presented an issue of fact for jury decision, regardless of the burden of proof in the particular noted being upon plaintiff."

In *Rickert* v. *Travelers Ins. Co.*, 282 Mich. 538, suit was also to recover on an insurance policy. The circuit judge, on motion, directed a verdict for the defendant, finding as a matter of law that the failure of the insured to inform the insurer of certain facts

known to him was a fraud on the company. In unanimously holding for reversal and granting a new trial, three opinions were written by this court. Mr. Justice BUSHNELL (two concurring) wrote:

"The principal question before us is whether plaintiff is precluded from recovering on the insurance policy by reason of the concealment of a material fact by the insured amounting to false representation on his part. * * *

"The insurance company had every opportunity to investigate its risk and there was no concealment by Clemans of a material fact known to him. * * *

"Taking plaintiff's testimony as true and viewing it in its most favorable light as we must do on his appeal from a directed verdict, we must hold in consideration of that evidence and the reasonable inferences and deductions that may be drawn therefrom, that plaintiff was entitled, on the question of fact thus raised, to a verdict at the hands of a jury."

Mr. Justice POTTER, in a concurring opinion, wrote:

"There is a clear-cut question of fact presented by the record herein which required the submission of the issue to the jury, and the trial court was in error in directing a verdict for defendant. * * *

"It seems to me, under the circumstances, there was sufficient to take the case to the jury."

Mr. Justice BUTZEL (three concurring) wrote:

"If the illness for which the doctor was consulted was not serious, the failure to disclose such attendance is not such a material misrepresentation as to void the policy. *Brown* v. *Metropolitan Life Ins. Co.*, 65 Mich. 306 (8 Am. St. Rep. 894); *Pudritzky* v. *Supreme Lodge Knights of Honor*, 76 Mich. 428; *Blumenthal* v. *Berkshire Life Ins. Co.*, 134 Mich. 216 (104 Am. St. Rep. 604). When there is testimony that the illness not disclosed by the applica-

tion and for which medical aid was sought, was serious, the question of the seriousness becomes one for the jury. *Hann* v. *National Union,* 97 Mich. 513 (37 Am. St. Rep. 365); *Rhode* v. *Metropolitan Life Ins. Co.,* 132 Mich. 503.   *   *   *
"There are important questions of fact presented and for that reason, there should be a new trial."

Plaintiff's testimony was in direct conflict with the evidence adduced by the defendant. The case was submitted to the jury, to determine whether to believe the testimony of plaintiff or the somewhat contradictory testimony of Dr. Gates and the opinion of Dr. Sites. There was substantial testimony to support the verdict. Credibility of witnesses was for the jury. Without regard to any view this court might take as to the preponderance of the evidence, the denial of defendant's motion to set aside the verdict and enter judgment for defendant *non obstante veredicto* will not be reversed.

One further question requires consideration. Defendant seeks reversal and a new trial on the ground of improper closing argument of plaintiff's counsel. The argument of defendant's counsel is not in the record and we have no way of determining the extent to which the argument now relied upon for reversal was called for in reply thereto. The record shows that defendant's counsel frequently interposed objections during plaintiff's counsel's argument and that the court invariably sustained the objections. Plaintiff's counsel did not persist in pursuing any objectional argument after the court's rulings. The circuit judge, in denying defendant's motion for a new trial on the ground of improper argument, said:

"If a request for peremptory instructions had been submitted on any such occasion, it would have been granted. Defendant's attorneys did not ask

for any such instructions and all of their written requests to charge were granted. If counsel believed the argument for plaintiff was unfair or prejudicial, they had a right to ask for peremptory instructions during the argument, they had a right to move for a mistrial, and they had a right to submit special requests to charge. Having failed to avail themselves of any of these remedies, they are in no position to assign the alleged improper argument as a ground for new trial. The cases on this point are collected in *Herbert* v. *Durgis*, 276 Mich. 158, and *Curth* v. *New York Life Ins. Co.*, 274 Mich. 513, 524, is directly in point."

Under these circumstances, defendant is not granted a new trial on the ground of improper argument.

Judgment affirmed, with costs to appellee.

CHANDLER, C. J., and NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.